**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| UNITED SPECIALTY INSURANCE CO. | CIVIL ACTION NO. 20-163 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| SANDHILL PRODUCTION INC., ET AL. | MAGISTRATE JUDGE HORNSBY |

## <u>MEMORANDUM RULING</u>

Before the Court is Defendant Sandhill Production, Incorporated's ("Sandhill") motion to dismiss for lack of jurisdiction and Plaintiff United Specialty Insurance Company's ("USIC") motion for summary judgment. Record Documents 8 and 18. Plaintiff opposed Sandhill's motion to dismiss and Sandhill did not file a reply. Record Document 13. Sandhill opposed USIC's motion for summary judgment and USIC responded. Record Documents 20 and 21. Defendant Wilshire Insurance Company ("Wilshire") has filed an answer in this matter, but did not file a response to the motion to dismiss or to the motion for summary judgment. Record Document 11. Both motions are now ripe for review. For the reasons stated herein, Sandhill's motion to dismiss [Record Document 8] is **DENIED**. USIC's motion for summary judgment [Record Document 18] is **GRANTED**.

### I.   Background

This case stems from a dispute over the scope of insurance coverage provided by commercial general liability policies issued to Sandhill by USIC. Between May 22, 2016 and May 22, 2020, USIC issued a total of four insurance policies to Sandhill. Record

Document 18-25 at ¶ 1. Each policy was in effect for one year, lasting from May 2016 to May 2017, from May 2017 to May 2018, and so forth. *Id.*

In December 2017, Litel Explorations, LLC ("Litel") filed suit against multiple defendants, including Sandhill, in the 31st Judicial District for the Parish of Jefferson Davis, State of Louisiana ("*Litel* Suit"). Record Document 18-10; *Litel Explorations LLC v. Sandhill Production Inc., el al.*, Docket No.: C823-17. This legacy suit[1] alleges that Litel's property was "contaminated and/or otherwise damaged by defendants' oil and gas exploration and production activities." Record Document 18-10 at 2. Litel seeks monetary damages and injunctive relief. *Id.* at 23-24. Litel amended its petition twice, but the fundamental claim did not change. Record Documents 18-11 and 18-12. In June 2018, USIC denied Sandhill coverage for the *Litel* Suit, relying on the Pollution Exclusion in its policies with Sandhill. Record Document 20-3.

In November 2018, the Office of Conservation of the Louisiana Department of Natural Resources ("OOC") issued a compliance order ("OOC Compliance Order") against Sandhill requiring it to repair G.A. Lyon Well #1, which was leaking, and remove surface contamination caused by the leak. Record Document 18-5. In May 2019, counsel for Sandhill contacted USIC and explained that the G.A. Lyon Well #1 was still "leaking oil and gas and presenting a hazardous situation." Record Document 20-5 at 2. Sandhill informed USIC that because of this leak at a well which it operated, it was subject to the

---

[1] A "legacy lawsuit" is a suit filed by a landowner "seeking damages from oil and gas exploration companies for alleged environmental damage[.]" *Marin v. Exxon Mobil Corp.*, 09-2368 (La. 10/19/10); 48 So. 3d 234, 238 n.1. These suits have this name "because they often arise from operations conducted many decades ago, leaving an unwanted 'legacy' in the form of actual or alleged contamination." *Id.*

OOC Compliance Order and requested coverage for compliance pursuant to the portion

of the policies' Insuring Agreement stating that USIC will "pay those sums that the insured

becomes legally obligated to pay as damages because of 'bodily injury' or 'property

damage' to which this insurance applies." *Id.* Sandhill also challenged USIC's earlier denial

of coverage in the *Litel* Suit. *Id.* at 3. Sandhill argued that it did not think oil or gas fell

into the Pollution Exclusion, but even if it did, there were claims such as breach of contract

included in the *Litel* Suit which USIC may be obligated to cover. *Id.* Further, Sandhill

explained that it now believed the well may be leaking due to a design defect, which is

not subject to the Pollution Exclusion. *Id.* Sandhill attached to this correspondence an

affidavit by an expert explaining that there was a "blowout" in the well and a

correspondence with Litel's counsel where she asserted that the leaking at the well is a

blowout. Record Documents 20-4, 20-5 at 3, and 20-6. The record reveals no response

from USIC to this correspondence or to a July 2019 email sent by Sandhill's lawyer,

though Sandhill asserts in its opposition to the motion for summary judgment that USIC

responded via a "Reservation of Rights letter" in August 2019.[2] Record Documents 20 at

5 and 20-7.

---

[2] Sandhill's statement of facts states, without citing a source in the record, that in
the Reservation of Rights letter USIC informed Sandhill that it would:

> [P]articipate in the defense of the *Litel* matter as set forth herein subject to
> the reservations herein until you are notified otherwise and/or unless you
> advise in writing that Sandhill is rejecting our offer of defense. If there is
> no "blowout" ongoing, USIC reserves the right to withdraw from the
> defense.

Record Document 20 at 5.

By August 2019, the blowout at G.A. Lyon Well #1 became part of the *Litel* Suit. First, Litel filed a motion seeking a mandatory injunction requiring Sandhill and other parties to plug and abandon G.A. Lyon Well #1 because of the blowout and the damage the leak was causing. Record Document 20-8. In September 2019, the OOC filed a motion to intervene in the *Litel* Suit. Record Document 20-10. Also in September 2019, another party to the litigation, Pioneer Natural Resources USA, Inc. ("Pioneer"), filed a crossclaim and third-party demand against Sandhill claiming that it was Sandhill, not Pioneer, which should be liable to stop the leaking well and for damages from the leak. Record Document 20-9. Sandhill filed its own crossclaim against Pioneer and other previous operators of the G.A. Lyon Well #1. Record Document 20-11 at 1-5.

Sandhill also filed a third-party demand against USIC for failing to provide a defense in the *Litel* Suit and for failing to cover Sandhill's "response cost" the OOC Compliance Order. *Id.* at 6-9. While the parties have not submitted evidence to this effect, USIC's complaint asserts that in November 2019, Sandhill dismissed the third-party complaint against USIC without prejudice. Record Document 1 at ¶ 27. USIC then filed the instant suit in February 2020 seeking a declaratory judgment that it has no duty to defend or indemnify Sandhill in relation to the OOC Compliance Order and that it has no duty to defend or otherwise provide coverage to Sandhill in the *Litel* Suit. *Id.* at 11. In the event that USIC is found to have obligations to Sandhill under the insurance policies, USIC asserts that Wilshire, Sandhill's previous insurer, and Sandhill are liable for a portion of the costs. *Id.* at 12. Wilshire filed an answer in response to the complaint, and Sandhill filed a motion to dismiss for lack of subject matter jurisdiction. Record Documents 8 and

4

11. Sandhill asserts that complete diversity between the parties is lacking and, therefore, that the case must be dismissed. Record Document 8.

Before the Court issued a ruling regarding the motion to dismiss, USIC filed a motion for summary judgment. Record Document 18. In this motion, USIC seeks a declaratory judgment that 1) "there is no coverage for the compliance order issued by the OOC because it does not fall with the terms of the Insuring Agreement of any of the USIC policies"; and 2) "there is no duty to defend the Litel Suit because the Pollution Exclusion precludes coverage." *Id.* Sandhill opposed the motion for summary judgment, and Wilshire filed no response. Record Document 20. Because USIC's motion for summary judgment is moot if the Court lacks jurisdiction, the Court will first address Sandhill's motion to dismiss.

## II.   Law and Analysis

### A.  Sandhill's Motion to Dismiss

#### 1.  Rule 12(b)(1) Standard

Motions filed under Federal Rule of Civil Procedure 12(b)(1) allow a defendant to challenge the subject matter jurisdiction of the court to hear a case. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). A district court may "find that subject matter jurisdiction is lacking based on '(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Wolcott v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011) (quoting *Ramming*, 281 F.3d at 161). If such jurisdiction is lacking, the case is properly dismissed. *Home Builders Ass'n of Miss., Inc. v. City of*

*Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). As the party asserting jurisdiction, the plaintiff bears the burden of proving that jurisdiction exists. *Ramming*, 281 F.3d at 161.

### 2. Diversity Jurisdiction

Sandhill contends that the Court lacks subject matter jurisdiction to adjudicate USIC's claims because the case invokes the Court's diversity jurisdiction, but there is not complete diversity between the parties because USIC and Wilshire must be considered citizens of Louisiana in this action.[3] Record Document 8-1 at 4-5. Sandhill argues that in a direct action against an insurer to which the insured is not joined as a defendant, the insurer is deemed to be a citizen of the state of which the insured is a citizen, in addition to the insurer's state of incorporation and principal place of business. *Id.* at 5-6. Sandhill also argues that under Louisiana law, insurance companies take on the citizenship of the insured for purposes of diversity jurisdiction. *Id.* at 6. According to USIC, this action does not qualify as a "direct action" and, therefore, the special rules regarding citizenship of an insurer are not applicable. Record Document 13 at 2.

USIC's complaint asserts that jurisdiction is proper under 28 U.S.C. § 1332. Record Document 1 at ¶ 3. It asserts that there is complete diversity between the parties and

---

[3] Sandhill makes its argument in regard to both insurers. USIC alleges that Wilshire is a citizen of North Carolina. Record Document 1 at ¶ 2b. Sandhill does not challenge the accuracy of this assertion, and instead only argues that Wilshire must also be considered a citizen of Louisiana because of its status as Sandhill's insurer. Record Document 8-1 at 5-6. The Court therefore does not address Wilshire's citizenship for purposes of diversity jurisdiction because whether it is a citizen of Louisiana is of no consequence to the Court's jurisdictional determination. If USIC is a citizen of Louisiana, then complete diversity does not exist because Sandhill is also a citizen of Louisiana. If USIC is not a citizen of Louisiana, then complete diversity exists regardless of whether Wilshire and Sandhill are both deemed citizens of Louisiana.

the amount in controversy exceeds $75,000, as required by the statute. *Id.* It alleges that

it is incorporated in Delaware and that it has its principal place of business in Texas. *Id.*

at ¶ 1. It alleges that Sandhill is incorporated and has its principal place of business in

Louisiana. *Id.* at ¶ 2. Sandhill does not argue that these assertions are incorrect and does

not challenge the amount in controversy. Instead, it contends that USIC should also be

considered a citizen of Louisiana for purposes of diversity jurisdiction based on its status

as Sandhill's insurer, thus meaning there is not complete diversity. Therefore, the Court

must determine whether USIC is considered a citizen of Louisiana in the instant case.

Sandhill first argues that USIC must be considered a citizen of Louisiana because

28 U.S.C. § 1332(c)(1) provides that "in any direct action against the insurer of a policy

or contract of liability insurance, whether incorporated or unincorporated, to which action

the insured is not joined as party-defendant, such insurer shall be deemed a citizen of"

every state of which the insured is a citizen, every state in which the insurer is

incorporated, and the state where the insurer has its principal place of business. However,

a complaint seeking declaratory relief is not a direct action under § 1332(c)(1). *ASW*

*Allstate Painting & Const., Co., Inc. v. Lexington Ins. Co.*, 188 F.3d 307, 310 (5th Cir.

1999). Because USIC seeks declaratory relief, the instant case is not a "direct action" and

USIC is not considered a citizen of Louisiana pursuant to § 1332(c)(1).

Sandhill also contends that "under Louisiana law insurance companies take on the

citizenship of the insured for purposes of diversity jurisdiction." Record Document 8-1 at

6. It supports this proposition by citing to *Green v. Wolters Kluwer U.S. Corp.*, No. CIV.A.

08-1065, 2008 WL 2355848 (E.D. La. June 6, 2008), and *Williams v. Liberty Mutual*

7

*Insurance Co.,* 468 F.2d 1207 (5th Cir. 1972). These cases are wholly unpersuasive because neither of the cases applied Louisiana state law. Rather, they examined the scope of who qualified as an "insured" for purposes of a direct action under § 1332(c)(1). *Green*, 2008 WL 2355848 at *1-2; *Williams*, 468 F.2d at 1209. Hence, Sandhill's argument that USIC must be considered a citizen of Louisiana under Louisiana law fails. USIC is a citizen of Delaware and Texas and Sandhill is a Louisiana citizen. Thus, complete diversity exists and USIC has properly invoked the Court's diversity jurisdiction. Sandhill's motion to dismiss for lack of jurisdiction is **DENIED**. The Court turns next to USIC's motion for summary judgment.

### B. USIC's Motion for Summary Judgment

#### 1. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the burden at trial will rest on the non-moving party, the moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence. *See id.* at 322–23.

If the movant satisfies its initial burden of showing that there is no genuine dispute of material fact, the nonmovant must demonstrate that there is, in fact, a genuine issue

for trial by going "beyond the pleadings" and "designat[ing] specific facts" for support. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with some metaphysical doubt as to the material facts," by conclusory or unsubstantiated allegations, or by a mere "scintilla of evidence." *Id.* (internal quotation marks and citations omitted). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1985) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). While not weighing the evidence or evaluating the credibility of witnesses, courts should grant summary judgment where the critical evidence in support of the nonmovant is so "weak or tenuous" that it could not support a judgment in the nonmovant's favor. *Armstrong v. City of Dall.*, 997 F.2d 62, 67 (5th Cir. 1993).

Additionally, Local Rule 56.1 requires the movant to file a statement of material facts as to which it "contends there is no genuine issue to be tried." The opposing party must then set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." W.D. La. R. 56.2. All material facts set forth in the movant's statement "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." *Id.*

### 2. Rules of Contract Interpretation

The instant case involves interpretation of an insurance policy. Interpretation of an insurance contract "usually involves a legal question which can be resolved properly in the framework of a motion for summary judgment." *Bonin v. Westport Ins. Corp.*, 05-

0886 (La. 5/17/06); 930 So. 2d 906, 910. "Under Louisiana law, '[a]n insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007) (quoting *Cadwallader v. Allstate Ins. Co.*, 02-1637 (La. 6/27/03); 848 So. 2d 577, 580).

Under the Louisiana Civil Code, contract interpretation "is the determination of the common intent of the parties." La. Civ. Code art. 2045. An insurance contract should be "construed according to the entirety of its terms and conditions set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to or made a part of the policy." *In re Katrina Canal Breaches Litig.,* 495 F.3d at 206 (quoting La. R.S. § 22:654). When the words in a contract "are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046.

"Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract." La. Civ. Code art. 2048. A court should resolve ambiguities by construing the policy as a whole, and not by construing one policy provision separately while disregarding other provisions. *In re Katrina Canal Breaches Litig.*, 495 F.3d at 207 (quoting *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So. 2d 759, 763 (La. 1987)). Ambiguities should be "strictly construed against the insurer and in favor of coverage" as long as the ambiguous provision is "susceptible to two or more *reasonable* interpretations." *Pioneer Expl., L.L.C. v. Steadfast*

*Ins. Co.*, 767 F.3d 503, 513 (5th Cir. 2004) (quoting *Cadwallader*, 848 So. 2d at 580) (emphasis in original).

### 3. Office of Conservation Compliance Order Coverage

USIC first argues that it is entitled to a declaratory judgment that its policies with Sandhill do not provide coverage for complying with the OOC Compliance Order because this coverage is not within the terms of the Insuring Agreement of any of the policies it issued. Record Document 18-1 at 18. USIC contends that the policies only provide coverage for sums payable as "damages" and the OOC Compliance Order seeks to compel Sandhill to perform certain acts, which are akin to injunctive relief, not damages.[4] *Id.* at 12-14. It also argues that all "response costs" Sandhill requests are costs associated with gaining control of the G.A. Lyon Well #1 and are therefore not covered by the USIC policies because these costs do not fall within the policies' definition of "property damage." Record Document 21 at 7. Finally, USIC contends that even if costs related to the OOC Compliance Order fall within the Insuring Agreement, there are several exclusions in the policies which preclude coverage. *Id.* at 8-10. These include the provision expressly stating that the policies do not apply to any costs or expenses incurred in conjunction with bringing a well under control and the Owned Property Exclusion. *Id.*

---

[4] USIC also argued that it is not liable to provide coverage for "defense costs" related to the OOC Compliance Order because the Insuring Agreement only provides defense costs for "suits" and the OOC proceedings are not a "suit" as defined by the policies. Record Document 18-1 at 11-12. Sandhill's asserts that it never requested that USIC cover its "defense cost," only its "response cost." Record Document 20 at 6-7. Because Sandhill states that it does not seek "defense costs," the Court need not address whether the OOC proceedings constitute a "suit" under the policies.

Sandhill maintains that USIC is liable for its response costs to the OOC Compliance Order. It argues that the Insuring Agreement provides coverage for sums Sandhill becomes liable to pay for property damage, and in this case, the OOC determined that the well is damaging property and assessed the damages as equal to the response cost of complying with the Compliance Order. Record Document 20 at 8.

As the party asserting that it is entitled to coverage, it is Sandhill's burden to show that the policy provides the requested coverage. *Tunstall v. Stierwald*, 01-1765 (La. 2/26/02); 809 So. 2d 916, 921. Sandhill identifies the Insuring Agreement as the portion of the policies entitling it to coverage for the costs of complying with the OOC Compliance Order. This provision states:

> SECTION I – COVERAGES
> COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY
> 1. Insuring Agreement
>> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

Record Documents 18-18 at 25, 18-19 at 25, 18-20 at 25, and 18-22 at 24. The policies define "property damage" as "physical injury to tangible property, including all resulting loss of use of that property." Record Documents 18-18 at 39, 18-19 at 39, 18-21 at 8, and 18-23 at 6.

It is USIC's burden to show that an exclusion applies to preclude coverage. *Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 872 (5th Cir. 2009) (citing *Doerr v. Mobil Oil Corp.*, 00-0947 (La. 12/19/00); 774 So. 2d 119, 124). USIC identifies two such provisions

12

in its policies with Sandhill. First, the Blowout and Cratering Coverage Endorsement which

states, in relevant part, that:

> This insurance does not apply to:
> 1. Any cost or expense incurred by you or at your request or by or at the request of any "co-owner of the working interest" in conjunction with controlling or bringing under control any oil, gas or water well.
>
> . . .
>
> D. Upon the "occurrence" of a blow-out or cratering of any oil, gas or water well resulting from or in connection with operations performed by you or on your behalf, you agree that you will at your own cost and expense, promptly and diligently take whatever steps are necessary or legally required of you or necessary for you or any other person to bring such well under control.
>
> If you delay or fail to comply with this agreement, we will not be liable for any "property damage" included within the "blowout & cratering hazard" resulting from the blow-out or cratering of any such well.

Record Documents 18-18 at 12-13, 18-19 at 12-13, 18-20 at 12-13, and 18-22 at 12-13.[5]

Second, the Owned Property Exclusion which states in relevant part that the insurance

does not apply to:

> j. Damage to Property
> "Property damage" to:
>
> (1) Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reasons, including prevention of injury to person or damage to another's property;
>
> (2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of these premises;
>
> . . .

---

[5] The exact language of this clause varies slightly between the polices, but these variations do not affect the Court's ruling.

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired, or replaced because "your work" was incorrectly performed on it.

Record Documents 18-18 at 28-29, 18-19 at 28-29, 18-20 at 28-29, and 18-22 at 28-29.

In this case, even if Sandhill could show that all of its response costs to the OOC Compliance Order constitute "damages" and "property damage" under the Insuring Agreement, USIC has carried its burden of showing that response costs related to the OOC Compliance Order requiring Sandhill to repair the blowout at the G.A. Lyon Well #1 are not covered by the policies.

First, the provisions excluding from coverage the costs to bring a well under control in the Blowout and Cratering Coverage Endorsement are applicable. The OOC Compliance Order states that "there is evidence that leakage is occurring around the surface casing of the referenced well resulting in the discharge of fluids of an undetermined composition to natural drainage" and requires that Sandhill "repair the surface casing and retrieve for proper disposition all surface contamination which resulted from the aforementioned discharge." Record Document 18-5 at 2. The parties do not dispute that this is related to a blowout of the well, and Sandhill's expert describes what is occurring at G.A. Lyon Well # 1 as a "high pressure blowout with the uncontrolled flow of gas and liquids from outside the well . . . ." Record Document 20-4 at 3.

Thus, the costs of complying with the OOC Compliance Order are a "cost or expense incurred by [Sandhill] . . . in conjunction with controlling or bringing under

control any oil, gas or water well" that is expressly exempted from coverage under the USIC policies. The parties also agreed that in the event of a blowout, Sandhill "will at [its] own cost and expense, promptly and diligently take whatever steps are necessary or legally required of [it] or necessary for [it] or any other person to bring such well under control." Record Document 18-18 at 12-13. Hence, USIC is not liable for coverage related to the response costs of complying with the OOC Compliance Order requiring Sandhill to remedy the blowout at the well.

Second, the Owned Property Exclusion applies to the instant situation. Sandhill operated the G.A. Lyon Well #1 at the time the OOC issued its Compliance Order related to stopping and cleaning up the leak at the well. The costs Sandhill incurs complying with the OOC Compliance Order are therefore costs for "repair, replacement, enhancement, restoration or maintenance" of property that Sandhill "own[s], rent[s] or occup[ies]" and are expressly excluded from coverage by the Owned Property Exclusion. To the extent the costs are to prevent the leak from contaminating surrounding property, the policies likewise do not provide coverage because the Owned Property Exclusion also applies when repairs or maintenance of the owned, rented, or occupied property is undertaken for the "prevention of injury to person or damage to another's property." Thus, the Owned Property Exclusion clearly excludes from coverage the response costs associated with the OOC Compliance Order.

Because the response costs related to the OOC Compliance Order are excluded from coverage under the unambiguous terms of the policy, USIC has no coverage obligations and its motion for summary judgment is **GRANTED** in this respect.

### 4. *Litel* Suit Coverage

USIC also seeks a declaration that it has no coverage obligations for the *Litel* Suit. Record Document 18-1 at 18. USIC accepts that its policies facially provide coverage because the *Litel* Suit is a "suit" seeking "damages" for "property damage." Record Document 18-1 at 14. Nevertheless, USIC contends that, upon reading the operative complaints in the *Litel* Suit, it becomes clear that USIC is not obligated to provide coverage for this suit because it falls within the polices' Pollution Exclusion. *Id.* at 14-18. According to USIC, the petition in the *Litel* Suit alleges that the "Litel property has been contaminated by oil and gas exploration activities." *Id.* at 15. These allegations, USIC argues, are nearly identical to other suits which Louisiana courts have found to fall within an insurance policy's Pollution Exclusion. *Id.*

Sandhill concedes that USIC may have a "viable" argument if the *Litel* Suit was only about the issues USIC describes. Record Document 20 at 9. Sandhill argues that the suit is not that narrow, however, because the suit has "many component parts" that are "intertwined" and includes allegations regarding a blowout at the G.A. Lyon Well #1, which USIC is obligated to cover. *Id.* In response to this argument, USIC again argues that any costs related to a blowout are excluded from coverage under the policy. Record Document 21 at 8.

Under Louisiana law, an insurer has a duty to defend its insured if the petition in the underlying suit "discloses the *possibility* of liability under the policy." *United Fire and Cas. Co. v. Hixson Bros. Inc.*, 453 F.3d 283, 285 (5th Cir. 2006) (emphasis in original). It is the insured's burden to show that the claims in the suit fall within what is covered by

16

insurance. *Martco Ltd. P'ship*, 588 F.3d at 872. If the insured meets this burden, the insurer "then has the burden of proving that the complaint states only facts that fall within an exclusion from coverage." *Id.*

In a suit challenging whether an insurer has a duty to defend in another suit, courts apply the "Eight Corners Rule." *Id.* Under this rule, a court "assess[es] whether there is a duty to defend by applying the allegations of the complaint to the underlying policy without resort to extrinsic evidence." *Id.* (citing *Adams v. Frost*, 43,503 (La. App. 2 Cir. 8/20/08); 990 So. 2d 751, 756). The allegations in the complaint should be liberally interpreted and any ambiguity in the insurance policy should be construed against the insurer. *Id.* (citing multiple Louisiana cases).

In this case, the parties have directed the Court's attention to two categories of documents in the *Litel* Suit. First is Litel's petition, as amended twice. Record Documents 18-10, 18-11 and 18-12. Second are the August 2019 Mandatory Injunction related to the G.A. Lyon Well #1 blowout, the September 2019 OOC motion to intervene, and the Pioneer crossclaim and third-party demand against Sandhill related to stopping the leak and damages caused by the leak. Record Documents 20-8, 20-9 and 20-10.

The Court turns first to the *Litel* Suit petition, as amended. In the petition, Litel alleges that its property has been "contaminated and/or otherwise damaged by defendants' oil and gas exploration and production activities." Record Document 18-10 at 2. Litel alleges that various aspects of the defendants' actions have resulted in naturally

17

occurring radioactive material ("NORM"), produced water,[6] drilling fluids, chlorides, hydrocarbons, and heavy metals contaminating its soil, surface waters, and groundwater. *Id.* at 8-9. Litel alleges that the defendants to the *Litel* Suit had knowledge of the contamination for years, but failed to disclose this information. *Id.* at 9-10. It alleges causes of action arising under tort, breach of contract, breach of obligations imposed by the Louisiana Mineral Code and Civil Code, and breach of implied obligations under the Louisiana Mineral Code and Civil Code. *Id.* at 19. Litel alleges that it is entitled to damages. *Id.* at 19-20.

The Pollution Exclusion which USIC contends precludes coverage states, in relevant part, that USIC's polices do not apply to:

> f. Pollution
> (1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.
> (2) Any loss, cost or expense arising out of any:
>> (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or
>> (b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants". [sic]

---

[6] "Produced water is highly saline water brought up from wells along with oil and gas during the production phase." *Tex. Oil & Gas Ass'n v. U.S. Env't Prot. Agency*, 161 F.3d 923, 929 (5th Cir. 1998).

Record Documents 18-18 at 47, 18-19 at 48, 18-21 at 17, and 18-23 at 15. The policies define "pollutants" to "mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed." Record Documents 18-18 at 39, 18-19 at 39, 18-21 at 8, and 18-23 at 6.

When, such as here, a pollution exclusion in an insurance policy is a total exclusion, Louisiana courts determine whether the exclusion applies in a particular case by applying a three-factor test first articulated in *Doerr*. *Doerr*, 774 So. 2d. at 135. First, "[w]hether the insured is a 'polluter' within the meaning of the exclusion." *Id.* Second, "[w]hether the injury-causing substance is a 'pollutant' within the meaning of the exclusion." *Id.* Third, "[w]hether there was a 'discharge, dispersal, seepage, migration, release or escape' of a pollutant by the insured within the meaning of the policy." *Id.*

In this case, Sandhill is "polluter" within the meaning of the exclusion. The petition in the *Litel* Suit alleges that Sandhill is engaged in operating and/or constructing oil and gas facilities. Record Document 18-11 at 4. In Louisiana, "[j]urisprudence has established that oil field operators and producers are 'polluters' under the *Doerr* test due to the fact that oil drilling and related activities present a clear and obvious risk of pollution." *Lodwick, L.L.C. v. Chevron U.S.A., Inc.*, 48,312 (La. App. 2 Cir. 10/2/13); 126 So. 3d 544, 561. The injury-causing pollutants at issue in the *Litel* Suit also qualify as "pollutants" within the meaning of the total pollution exclusion. As the *Lodwick* court noted, "contaminants such as NORM, oil, sludge, grease, salt water, and other hazardous and/or toxic substances are 'pollutants' within the meaning of the total pollution exclusion." *Id.*

19

(citing *Grefer v. Travelers Ins. Co.*, 04-1428 (La. App. 5 Cir. 12/16/05), 919 So. 2d 758, 771). Finally, the *Litel* Suit petition alleges that the pollutants migrated onto its property. Record Document 18-10 at 9.

Thus, USIC has met its burden of showing that the Pollution Exclusion applies to the allegations in the *Litel* Suit petition, and USIC has no duty to defend or otherwise provide coverage to Sandhill in the *Litel* Suit based on the allegations in the petition. The Court must now consider whether other pleadings in the *Litel* Suit—that is, Litel's motion for a mandatory injunction, the OOC's motion to intervene in the *Litel* Suit, and Pioneer's cross-claim—obligate USIC to provide coverage to Sandhill.

As previously detailed, the motion for a mandatory injunction and Pioneer's crossclaim directly relate to the blowout at G.A. Lyon Well #1. Record Documents 20-8 and 20-9. The OOC motion to intervene states that it is entitled to intervene because the *Litel* Suit alleges that the defendants engaged in various activities related to oil and gas exploration and production which resulted in pollution and environmental property damage. Record Document 20-10 at 14. These pleadings do not obligate USIC to provide coverage for the *Litel* Suit. As  the Court has already concluded, USIC is not obligated to provide coverage for costs related to the blowout at G.A. Lyon Well #1 or for claims related to pollution which are covered by the Pollution Exclusion. As such, USIC is also not obligated to provide a defense for a suit related to these claims. Hence, the presence of these claims and issues in the lawsuit do not obligate USIC to provide coverage in the *Litel* Suit. Because none of the pleadings in the *Litel* Suit reveal any clams for which USIC

may be obligated to provide coverage, USIC has no duty to provide a defense or other coverage related to the *Litel* Suit.

## III.   Conclusion

For the reasons stated herein, Defendant Sandhill's motion to dismiss for lack of jurisdiction [Record Document 8] is **DENIED**. Plaintiff's motion for summary judgment [Record Document 18] is **GRANTED**. Plaintiff has no coverage obligation under Policy No. USA4121956, Policy NO. USA4161588, Policy No. USA4219756, or Policy No. USA4268439 related to the November 1, 2018 Compliance Order No. E-I&E18-1147 or to *Litel Explorations LLC v. Sandhill Production Inc., el al.*, Docket No.: C823-17 in the 31st Judicial District Court, Parish of Jefferson Davis, State of Louisiana.

Plaintiff shall have until **April 23, 2021** to inform the Court whether there remain any issues for resolution in this matter.

**THUS DONE AND SIGNED** this _____ 17th day of March, 2021.

ELIZABETH E. FOOTE
UNITED STATES DISTRICT JUDGE